UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROY A. LAUES and KRISTEN G. LAUES,

      Plaintiffs,

v.                                                      Case No. 2:14-CV-12313

VICTORIA A. ROBERTS, BANK OF AMERICA,      HON. GORDON J. QUIST
N.A., BODMAN PLC, BRIDGET M. HATHAWAY,
NATIONSTAR MORTGAGE LLC, and
GREEN TREE SERVICING, LLC,

      Defendants.
_____/

**OPINION REGARDING DEFENDANTS' MOTIONS TO
DISMISS, DEFENDANT NATIONSTAR'S MOTION TO STRIKE,
PLAINTIFFS' MOTIONS FOR RECONSIDERATION, AND
PLAINTIFFS' MOTION TO DISMISS DEFENDANTS NATIONSTAR'S
AND GREENTREE'S COUNSELS' FILINGS**

Pro se Plaintiffs, Roy A. Laues and Kristen G. Laues, filed a verified complaint on June 12, 2014 against Bank of America, N.A. (BANA), Green Tree Servicing, LLC (Green Tree), Nationstar Mortgage, LLC (Nationstar), attorney Bridget M. Hathaway and her law firm Bodman PLC (referred to collectively with BANA as the BANA Defendants), United States District Judge Victoria A. Roberts, and the United States Attorney's Office for the Eastern District of Michigan, purporting to set forth claims for violations of various constitutional rights, violation of the Fair Debt Collection Practices Act (FDCPA), and a declaratory judgment. On October 28, 2014, the Laueses filed a verified first amended complaint against Defendants BANA, Green Tree, Nationstar, Hathaway and Bodman, and Roberts, but not the United States Attorney's Office, purporting to allege claims for a declaratory judgment under the FDCPA, negligent violation of the FDCPA, and conspiracy under the FDCPA. The Laueses' claims in this case arise out of, relate to, or seek review of, a prior lawsuit they filed in this district, captioned *Roy A. Laues and Kristen G. Laues v. Bank of America, N.A. et al.*, No. 2:13-CV-12468 (*Laues* I), over which Judge Roberts presided. Pursuant to an Order

entered on January 6, 2015, this Court dismissed Judge Roberts from this case based on the doctrine of absolute judicial immunity. (Dkt. # 44.)

Defendants have filed motions to dismiss the Laueses' claims on various grounds, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. ## 21, 24 and 35.) The Laueses responded to Green Tree's motion and Nationstar's motion, but did not respond to the BANA Defendants' motion. The Laueses have filed objections to the Court's November 18, 2014 Order granting the BANA Defendants' motion to extend time and the Court's January 6, 2015 Order dismissing Judge Roberts, which the Court will construe as motions for reconsideration. (Dkt. ## 36, 48.) In addition, the Laueses have filed a motion to dismiss Nationstar's and Greentree's counsels' filings. (Dkt. # 47.) Finally, Nationstar has filed a motion to strike the Laueses' so-called "notice of nonfeasance" (dkt. # 32). (Dkt. # 41.)

For the following reasons, the Court will grant Nationstar's motion to strike, deny the Laueses' motions for reconsideration and their motion to dismiss, and grant Defendants' motions to dismiss.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is taken from Judge Roberts' October 15, 2013 Opinion and Order in *Laues* I:

> America's Wholesale Lender ("AWL") is the trade name for Countrywide Home Loans, Inc. ("CHL"). CHL is a unit of Countrywide Financial Corporation ("CFC"). CFC purchases, securitizes, and services mortgages. Bank of America ("B of A") purchased CFC in 2008.
> The Laues obtained two loans to purchase property in Canton, MI. The first loan was made in the principal amount of $975,000.00. The Laues granted a mortgage on the property as security for the first loan in favor of mortgagee [Mortgage Electronic Registry System], acting as nominee for AWL. The second loan was made in the principal amount of $260,000.00. The Laues granted a mortgage on the property as security for this second loan, also in favor of [Mortgage Electronic Registry System], acting as nominee for lender AWL. [Mortgage Electronic Registry System] assigned the first mortgage to U.S. Bank National Association as Trustee for GSAA Home Equity Trust ("US Bank") on April 20,

2

> 2012; it assigned the second mortgage to The Bank of New York Mellon ("BNYM") on April 25, 2012.
> 
> The Laues defaulted on both loans in April 2012. They allegedly contacted B of A to work out payment arrangements that kept the account in default status but out of foreclosure. The Laues then sent letters "disputing the mortgage debt and queried for the identity of the real party in interest" in January, February, March, and April 2013. B of A responded to their inquiries and held itself out as the servicer of the loans.

(*Laues* I, Dkt. # 28 at Page ID 408–09.)

On May 1, 2013, the Laueses filed a complaint in the Wayne County Circuit Court against BANA and other defendants requesting that the court quiet title to the Laueses' property "for fraud and the bifurcation of note and mortgage." (*Laues* I, Dkt. # 1 at Page ID 17.) On June 6, 2005, Defendant Hathaway and another attorney, Brian Summerfield, both of the Bodman law firm, appeared on behalf of the defendants and filed a notice of removal to this court, alleging diversity jurisdiction and federal question jurisdiction as bases for removal. (*Laues* I, Dkt. # 1.) The Laueses moved to remand the case to state court, and on June 6, 2013, Judge Roberts entered an Order denying the Laueses' motion to remand, concluding that the federal court had both diversity and federal question jurisdiction over the removed case. (*Laues* I, Dkt. # 10.) Judge Roberts denied the Laueses' motions for reconsideration on July 17, 2013. (*Laues* I, Dkt. # 15.)

On August 22, 2013, the defendants filed a motion to dismiss. On October 15, 2013, after the motion was fully briefed, Judge Roberts issued an Opinion and Order granting the motion. (*Laues* I, Dkt. # 28.) In granting the motion, Judge Roberts concluded that the Laueses lacked standing to challenge Mortgage Electronic Registry System's assignment of the mortgages. She also held that the Laueses failed to state a claim because the Laueses' debt was not discharged by the merger of AWL and CFC into BANA, note-splitting is not a valid cause of action, the Laueses failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and the Laueses failed to state a viable claim to quiet title. (*Id.* at Page ID 411–13.) The Laueses appealed Judge Roberts' Order and Judgment to the United states Court of Appeals for the Sixth Circuit.

3

However, on May 23, 2014, the Sixth Circuit dismissed the appeal as untimely. (*Laues* I, Dkt. # 33.) Denied further relief from the rulings in *Laues* I, the Laueses proceeded to file the instant case.

## II. DISCUSSION

**A.     Nationstar's Motion to Strike and the Laueses' Motion to Dismiss**

Nationstar has filed a motion pursuant to Federal Rule of Civil Procedure 12(f) to strike the Laueses' so-called "notice of nonfeasance" (Dkt. # 32), on the grounds that the notice presents "an insufficient defense or . . . redundant, immaterial, impertinent or scandalous matter." (Dkt. # 41 at Page ID 569–70.) Nationstar's reliance on Rule 12(f) as a basis to strike the Laueses' notice is misplaced for two reasons. First, Rule 12(f) is limited to "pleadings." *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966) (noting that Rule 12(f) "specifically relates to matters to be stricken from pleadings but does not make provision for testing the legal sufficiency of affidavits by a motion to strike"). The Laueses' notice is not a pleading. *See* Fed. R. Civ. P. 7(a). Moreover, Nationstar requests that the Court strike the entire document, not simply matters "from" the document. Nonetheless, "federal courts have inherent power to strike frivolous motions [and other filings]" from their docket. *Mathis v. Martin*, Civ. Action No. 8:13-cv-02597, 2013 WL 5609134, at *3 (D. Md. Oct. 11, 2013).

The Laueses' notice constitutes a frivolous document. In their notice, the Laueses assert that Defendants' counsel have failed to proffer their respective required oaths, have failed to establish that they are acting as Defendants' agents, and have violated various criminal laws. All of these arguments are frivolous, as all defense counsel are members of the State Bar of Michigan in good standing and are admitted to practice in this Court. Moreover, there is no requirement that attorneys appearing in federal court, in general, or in this district in particular, are required to proffer an oath or are required to prove that they are acting as agents for their clients. Finally, the Laueses' allegations that defense counsel have violated impertinent criminal statutes or rules of professional conduct are both frivolous and irrelevant because, among other reasons, the Laueses lack standing

to enforce the cited criminal statutes.  *See Knockum v. BAC Home Loans Servicing, L.P.*, No. 2:12-cv-416 GEB DAD PS, 2012 WL 3730755, at *4 (E.D. Cal. Aug. 27, 2012) (noting that "private parties generally lack standing to enforce federal criminal statutes").  Accordingly, the Court will grant Nationstar's motion and strike the Laueses' notice of nonfeasance.

The Laueses have also filed a motion to dismiss all of the filings by Nationstar's counsel and Greentree's counsel.  As support for their motion, the Laueses cite essentially the same grounds set forth in their notice of nonfeasance.  As set forth above, the Laueses' arguments lack merit and are frivolous.  Accordingly, the Court will deny the Laueses' motion to dismiss.[1]

**B.      The Laueses' Motions for Reconsideration**

As noted above, the Laueses have filed two objections, which the Court construes as motions for reconsideration of the November 18, 2014 and January 6, 2015 Orders.

Local Rule 7.1(h)(3) addresses motions for reconsideration, as follows:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication.  The movant must not only demonstrate a palpable defect by which the court and the parties and other person entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3).  A motion for reconsideration that merely rehashes arguments originally presented and rejected by the court is improper.  *Kersh v. Balan*, No. 93-1604, 1994 WL 284097, at *1 (6th Cir. June 23, 1994).

Having reviewed the Laueses' motions for reconsideration, the Court finds them lacking in merit because they either rehash prior arguments or are frivolous.  The Court properly granted the BANA Defendants' motion for an extension of time.  The Laueses offer no legitimate reason to

---

[1] The Laueses also cite Federal Rules of Evidence 601, 603, and 611(a) in support of their motion.  However, the Federal Rules of Evidence do not apply because "an argument presented to the court is not evidence."  *Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 498 (6th Cir. 2012).  Thus, there is no evidentiary basis to strike Nationstar's counsel's filings.

challenge that ruling because, as noted above, BANA's counsel are not required to prove that they are acting as BANA's agents in this case, nor are they required to present any kind of an oath. As for the January 6, 2015 Order dismissing Judge Roberts, the Laueses fail to show that the Court's ruling that Judge Roberts is entitled to absolute judicial immunity was erroneous. The Laueses' citation of the oft-quoted, but often misapplied, rule that subject matter jurisdiction can be raised at any time does not show that Judge Roberts acted beyond her jurisdiction. Similarly, the rule that "[p]ro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), does not help the Laueses, because even affording their first amended verified complaint a liberal construction, the fact remains that Judge Roberts acted in her judicial capacity in *Laues* I.

**C.     Motions to Dismiss**

    **1.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

(2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

2.    **This Court Lacks Jurisdiction to Review *Laues* I**

Initially, the Court notes after a thorough review of the Laueses' first amended complaint that the Laueses are essentially using this case and the Declaratory Judgment Act, 28 U.S.C. § 2201, to have this Court review Judge Roberts' order and judgment in *Laues* I. For example, the Laueses continue to assert that BANA and the other Defendants in *Laues* I improperly removed the case and that Judge Roberts improperly denied the Laueses' motion to remand. (Dkt. # 8 at Page ID 38, 43, 60.) The Laueses also contend that in her prior rulings, Judge Roberts failed to require the defendants to produce the original unaltered promissory notes and that Judge Roberts erred in holding that the Laueses lacked standing to contest the assignments and that the Laueses lacked any claim based on the splitting of the promissory notes from the mortgages. (*Id.* at Page ID 50–53.)

If the Laueses were dissatisfied with the decision in *Laues* I, their remedy was an appeal to the Sixth Circuit. *See* 28 U.S.C. § 1291; *see also Lapides v. Nat'l City Bank of Minneapolis*, 100 F. App'x 910 (4th Cir. 2004) (per curiam) ("The appropriate remedy for a party aggrieved by a judgment is appeal."). The Laueses may not remedy their failure to file a timely appeal by seeking to have this Court review Judge Roberts' order and judgment because this Court lacks jurisdiction to do so. *See Unites States v. Westine*, No. 14-10, 2014 WL 7004930, at *3 (E.D. Ky. Dec. 10, 2014) (stating that "this Court has no jurisdiction to upset or review a past judgment issued by another District Court"); *Hirsch v. United States Marshals Serv.*, No. 13-1473, 2013 WL 5496807, at *1 (D.D. C. Sept. 26, 2013) ("Plaintiff seeks an order from this Court to declare the underlying

7

judgment void for lack of jurisdiction . . . , but this Court lacks jurisdiction to review the orders of another district court." (internal quotation marks omitted)); *Cherry v. McDonough*, No. 4:07cv445-RH/WCS, 2008 WL 482739, at *4 (N.D. Fla. Feb. 18, 2008) ("This court has no authority to review decisions of another district court, or of the Eleventh Circuit, which reviews judgments of this and other district courts."); *Dana Corp. v. Fireman's Fund Ins. Co.*, Nos. 3:83CV1153, 3:85CV7491, 1997 WL 135591, at *2 (N.D. Ohio Feb. 10, 1997) ("I am unaware of any jurisdictional grant by Congress that authorizes one district court to sit in review of judgments by another district court."). In *Baier v. Parker*, 523 F. Supp. 288 (M.D. La. 1981), the court rejected an attempt by the plaintiffs—similar to what the Laueses seek to do in this case—to persuade the district court under the guise of the Declaratory Judgment Act to overturn the judgment of another district court. The court stated:

> The Court believes that the plaintiffs in this suit are attempting to use the Declaratory Judgment Act to have this Court review the decisions rendered by Judge Parker and the Court of Appeals. This Court declines to do so. Whatever the plaintiffs have styled their action, plaintiffs' suit is nothing more than a horizontal appeal taken to a district court of another district court's decision and of a decision rendered by an appellate court. Such attempts to deliberately bypass the proper channels for appellate review shall not be tolerated or condoned by this Court.

*Id.* at 290; *see also Seale v. Hoffman*, 306 F. Supp. 330, 331 (N.D. Ill. 1969) (holding that the plaintiff's declaratory judgment action was an improper collateral attack on another district court's rulings). Accordingly, this Court lacks jurisdiction to address the Laueses' challenges to Judge Roberts' prior rulings in *Laues* I.

### 3.     The Laueses' Claims Are Barred by Claim and Issue Preclusion

Although the first amended complaint shows that the Laueses are actually seeking review of Judge Roberts' prior Order and Judgment, to the extent the Laueses actually assert a claim against Defendants, it is barred by claim and issue preclusion.

Although the BANA Defendants and Nationstar rely on Michigan law regarding the application of res judicata, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171 (2008); *see also* Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").[2]  "The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it." *Id.*  "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1 (1984).  Thus, claim preclusion not only bars the parties from relitigating issues that were actually litigated, but also from relitigating issues that could have been raised in the prior action. *J.Z.G. Res., Inc.*, 84 F.3d at 214.  Claim preclusion applies where the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999) (en banc) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs

---

[2] Claim preclusion is a proper ground for dismissal on a motion under Rule 12(b)(6) because courts may consider public records in ruling on a Rule 12(b)(6) motion. *See Helfrich v. Metal Container Corp.*, 102 F. App'x 451, 452 (6th Cir. 2004).

9

in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171 (internal quotation marks omitted). Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

First, Judge Roberts' Order and Judgment dismissing the Laueses' complaint with prejudice in *Laues* I constituted a final decision on the merits. *See Haddad v. Mich. Nat'l Corp.*, 34 F. App'x 217, 218 (6th Cir. 2002) ("A dismissal with prejudice is considered a final judgment on the merits for purposes of res judicata."). Second, the Laueses and BANA were both parties in *Laues I*. Although Hathaway and Bodman were not parties in *Laues I*, they represented BANA and were sufficiently connected with its interest to constitute its privy. *See Franklin v. Dean*, No. 2:11-CV-683-WKW, 2013 WL 1867105, at *8 (M.D. Ala. May 3, 2013) ("[I]n Mr. Dean's role as ASECU's attorney in the state-court action, Mr. Dean had an ample laboring oar himself in the conduct of the underlying suit." (internal quotation marks and brackets omitted)). Similarly, although the Laueses did not sue Greentree and Nationstar in *Laues* I, as servicers of the two mortgages held by BANA, Greentree's and Nationstar's interests in the two mortgages are sufficiently aligned with BANA's interest to satisfy the privity requirement. *See Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2014 WL 3767118, at *6 (E.D. Va. July 31, 2014) ("Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan. Thus, it will be a rare case in which those two parties are not perfectly identical with respect to successive suits arising out of the same transaction." (internal quotation marks omitted)); *Spencer v. Nat'l City Mortg.*, No. 11-14214, 2013 WL 228041, at *4–5 (E.D. Mich. Jan. 22, 2013) (holding that mortgage servicer's

interest was sufficiently aligned with the mortgagee's interest to satisfy the privity requirement for *res judicata* under Michigan law). Third, although the Laueses' first amended complaint is rambling and barely intelligible, their purported claims concern the validity of the promissory notes and mortgages, which was directly at issue in *Laues* I. That is, in *Laues* I, Judge Roberts held that the Laueses could not challenge the validity of the mortgage loans as a result of note splitting and that the Laueses lacked a colorable claim to quiet the title to their property because the Laueses' interest in the property is not superior to that of BANA and the other defendants. The Laueses' claims in this case, which continue to attack the validity of the mortgages on the Laueses' property, were either decided or could have been decided in the prior litigation. Although the Laueses did not assert a claim under the FDCPA in *Laues* I, their allegations in their first amended complaint show that their FDCPA claim or claims in this case relate to their prior quiet title claim. (Dkt. # 8 at Page ID 52 ("Declaration by this court Defendants in Laues' 'Petition in the nature of a quiet title authorized by MCL 600.2932(5) et seq. and Fraud under UCC § 9" . . . and this instant case as claimed creditors did not produce the original Note and Mortgage . . . ."), Page ID 60 ("The Defendants prior to removing Plaintiff's Petition in the nature of a quiet title . . . either knew or should have known by falsely defending that MERS assignment to BNYM, **US Bank or BANA interest in Laues property** was valid, have made material, false and misleading representations."), Page ID 62 ("Defendants knowingly and intentionally interfered with plaintiff right to quiet the invalid liens against plaintiff home by failing in good faith to furnish proof of a lawful debt.").) Thus, the third and fourth elements of claim preclusion are met.

All of the requirements for issue preclusion are also satisfied in this case, with regard to the Laueses' allegations attacking the validity of the mortgages and fraud in connection with the mortgage loans. That is, those issues were raised and actually litigated in *Laues* I, the determination of those issues was necessary to the outcome of the proceeding, Judge Roberts issued a final

judgment on the merits in *Laues* I, and the Laueses had a full and fair opportunity to litigate those issues. Accordingly, the Laueses' claims are barred by both claim and issue preclusion.

### 4. The Laueses Fail to Comply with Basic Pleading Requirements and Fail to State a Claim

Pursuant to Federal Rule of Civil Procedure 8(a), a party seeking relief must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Laueses' first amended complaint fails to comply with these basic pleading requirements. Although lengthy, the first amended complaint fails to notify Defendants in concise, coherent terms, what they did and why they are liable. The purpose of the rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 555 U.S. at 555, 127 S. Ct. at 1964 (internal quotation marks and ellipses omitted). The Laueses' allegations are vague, rambling, and confusing. A significant portion of their pleading consists of naked legal conclusions and quotations from cases that fail to provide Defendants the required notice of the claims against them.

Even giving the first amended complaint a generous reading, it also fails to state a claim. As noted above, Judge Robert addressed the Laueses' fraud and quiet title claims in *Laues* I, and the Court need not address them again in this case. As for the FDCPA claim, the Laueses fail to state a claim against any Defendant. Although the Laueses make broad assertions about Defendants failure "to adhere to the requirements imposed upon [them] in the [FDCPA]," (dkt. # 8 at Page ID 59), the Laueses essentially allege that Defendants failed to comply with the debt verification requirement under the FDCPA. *See* 15 U.S.C. § 1692g. This claim fails for a number of reasons.

The Laueses' claim against BANA fail because their allegation that BANA is a debt collector is legally incorrect. As established in *Laues* I, BANA acquired the Laueses' mortgages before the Laueses defaulted on them. The FDCPA specifically excludes from the definition of "debt

12

collector" any "debt which was not in default at the time it was obtained" by the person seeking to collect it. 15 U.S.C. § 1692a(6)(F)(iii). *See Muncy v. Centex Home Equity Co.*, No. 1:14CV00016, 2014 WL 3359335, at *3 (W.D. Va. July 9, 2014) (noting that "debt collectors do not include consumer's creditors, mortgage servicing companies, or assignees of debt, so long as the debt was not in default at the time it was assigned" (internal quotation marks omitted)). As to Hathaway and Bodman, the Laueses fail to allege any facts that show that either Defendant was a debt collector. Hathaway and her firm, Bodman, represented the defendants in *Laues* I, but there is no indication that they took any action to collect a debt, beyond the Laueses' vague allegation that they "used the United States mail to send documents used to support BANA collection of a debt alleged to have been owed to BNYM & US BANK as a result of an alleged assignment by Mortgage Electronic Registration Systems, Inc." (Dkt. # 8 at Page ID 44.) The Laueses fail to describe the allege documents and why or how they related to debt collection activity.

The Laueses' FDCPA claim against Nationstar fails because the Laueses do not allege that Nationstar engaged in any debt collection activity. Apart from their allegation that Nationstar is a debt collector, which the Court assumes to be true for purposes of Nationstar's motion to dismiss, the Laueses allege only that they "disputed the debt with Nationstar to the Consumer Financial Protection Bureau to verify the alleged debt Nationstar claimed to be servicing." (Dkt. # 8 at Page ID 48.) In other words, the Laueses do not allege that Nationstar did anything to collect a debt. Moreover, by their own admission, the Laueses directed their "dispute" at the Consumer Financial Protection Bureau, not Nationstar. *See* 15 U.S.C. § 1692g(b) (requiring the consumer to notify the debt collector in writing that the debt, or any portion of it, is disputed).

Finally, although Greentree may be a debt collector for purposes of the FDCPA, the Laueses' claim against it also fails as a matter of law. Pursuant to 15 U.S.C. § 1692g(b), if a consumer notifies a debt collector in writing that it disputes the debt or any portion of it or requests the name

13

and address of the original creditor, the debt collector must cease collection of the debt "until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer." Although the FDCPA does not define the term "verification," in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777 (6th Cir. 2014), the Sixth Circuit cited with approval the Fourth Circuit's definition in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999):

> [V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. *See Azar v. Hayter*, 784 F. Supp. 1314, 1317 (N.D. Fla.), *aff'd*, 66 F.3d 342 (11th Cir. 1995), *cert. denied*, 516 U.S. 1048 [116 S. Ct. 712, 133 L.Ed.2d 666] (1996). Consistent with the legislative history, verification is only intended to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. S. Rep. No. 95-382, at 4 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Haddad*, 7589 F.3d at 783 (quoting *Chaudhry*, 174 F.3d at 406). After reviewing other cases, the *Haddad* court observed that the baseline for verification, which "depends on the facts of a particular situation, is information that enables "the consumer to sufficiently dispute the payment obligation." *Id.* at 785 (internal quotation marks omitted from second passage).

In the instant case, the documents that the Laueses attached to their amended complaint show that Greentree complied with its verification obligations under the FDCPA. On May 19, 2014, Greentree sent the Laueses a letter referencing Greentree's prior responses to the Laueses on August 15, 2013 and February 26, 2014, and enclosing copies of the responses. (Dkt. # 8-10 at Page ID 201.) In its letter, Greentree stated that the loan balance of $252,116.40 on the second mortgage was charged off on May 31, 2013, and included a principal balance of $249,292.29 and a corporate advance balance of $1,824.11. The letter also enclosed a breakdown of the corporate advances and

14

indicated that because the account balance had been charged off, no additional fees/costs would be assessed. Finally, the letter provided the last billing statement and a payoff amount. The August 5, 2013 letter that Greentree sent the Laueses provided the name and address of the creditor, indicated that the servicing of the loan had been transferred to Greentree, enclosed a copy of the note and mortgage that the Laueses signed on April 26, 2006, and provided the balance, which had been charged off prior to the transfer of servicing. (Dkt. # 8-10 at Page ID 205.) This information, which verified the balance due and enclosed copies of the note, mortgage, and payment history, was more than sufficient to allow the Laueses to dispute their payment obligation.

As for the Laueses' claims for negligent violation of the FDCPA and conspiracy to violate the FDCPA, those claims simply repackage the Laueses' FDCPA claims and thus fail for the reasons stated above.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss, grant Nationstar's motion to strike, and deny the Laueses' motions for reconsideration and their motion to dismiss. Finally, the Laueses first amended complaint will be dismissed with prejudice.

An Order consistent with this Opinion will enter.


Dated: March 25, 2015                    /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE